IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| HERMAN T.,[1] | ) |
| | ) |
| Plaintiff, | ) Case No. 1:22-cv-00852 |
| v. | ) |
| | ) Magistrate Judge Jeannice W. Appenteng |
| MARTIN O'MALLEY,[2] | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**

Herman T. ("claimant") moves to reverse the final decision of the Commissioner of Social Security's ("the Commissioner") denial of claimant's applications for Disability Insurance Benefits ("DIBs"). Dkt. 15, 16. For the reasons set forth below, the Court affirms the Commissioner's decision.

**I. BACKGROUND**

**A. Procedural History**

Claimant was originally approved for Supplemental Security Income Benefits on April 7, 2009, due to his diagnoses of adjustment disorder and conduct disorder. R. 253. Upon claimant turning 18, the Commissioner performed a redetermination of benefits and found that claimant was not disabled under the adult standards in

---

[1] In accordance with Internal Operating Procedure 22 – Privacy in Social Security Opinions, the Court refers to claimant only by his first name and the first initial of his last name.

[2] Martin O'Malley became the Commissioner of Social Security on December 20, 2023. Pursuant to Federal Rule of Civil Procedure 25(d), Martin O'Malley should, therefore, be substituted for Kilolo Kijakazi as defendant in this suit.

August 2015. R. 257-261. Claimant appealed and the Administrative Law Judge ("ALJ") issued a fully favorable decision in March 2018. R. 92-101. The ALJ found that claimant was unable to complete a normal workday without interruptions from psychological symptoms and found that claimant would be off task one-third of the time. *Id.* However, in February 2019, claimant was incarcerated, and his benefits were terminated. R. 836-871. Claimant was released on November 29, 2019, R. 874, and filed the instant application for benefits on December 17, 2019. R. 169-175.

Claimant was 23 years old at the time he filed his December 2019 application, which alleged he was disabled due to a learning disability and behavior problems. R. 190. His application was denied, and claimant filed a timely request for a hearing. An administrative hearing was held on July 20, 2021, where claimant—represented by counsel—testified, along with his mother and a vocational expert ("VE"). R. 26-63. In August 2021, the ALJ denied benefits, finding that claimant could perform a significant number of jobs in the national economy despite his mental health symptoms. R. 10-25. Claimant timely requested review with the Appeals Council, who denied his request for review on December 21, 2021, R. 1–6, leaving the ALJ's decision as the final decision of the Commissioner.

### B. The Social Security Administration Standard to Recover Benefits

Under the Social Security Act, disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."

2

42 U.S.C. § 423(d)(1) (A). The regulations prescribe a five-step analysis to disability claims. *See* 20 C.F.R. §§ 404.1520(a), 416.920. The Commissioner must consider whether: (1) the claimant has performed any substantial gainful activity during the period for which she claims disability; (2) the claimant has a severe impairment or combination of impairments; (3) the claimant's impairment meets or equals any listed impairment;[3] (4) the claimant retains the residual functional capacity ("RFC") to perform her past relevant work;[4] and (5) the claimant is able to perform any other work existing in significant numbers in the national economy. *Id.*; *see Zurawski v. Halter*, 245 F.3d 881, 885 (7th Cir. 2001). If, at the end of this sequential analysis, the ALJ finds a claimant can perform *any* job that exists in substantial number, the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(v).

### C. The ALJ's Decision

At Step One, the ALJ found claimant had not engaged in substantial gainful activity since December 3, 2019. R. 15. At Step Two, the ALJ found that claimant suffered from the following severe impairments: "personality disorder; learning disorder; anxiety disorder; trauma disorder; depressive disorder; and intermittent explosive disorder." R. 16. At Step Three, the ALJ determined that the paragraph B criteria were not satisfied, meaning claimant did not have an impairment or combination of impairments that meets or medically equals a listed impairment.

---

[3] The specific criteria that must be met to satisfy a listing are described in Appendix 1 of the regulations. 20 C.F.R. Pt. 404, Subpt. P, App. 1.

[4] The RFC defines the exertional and non-exertional capacity to work despite the limitations imposed by the claimant's impairments.

3

R. 16-17. At Step Four, the ALJ found "claimant has the residual functional capacity to perform a full range of work at all exertional levels" with certain non-exertional limitations, such as requiring few work-related decisions, few changes in the work setting, limited interaction with the public, and 10-minute breaks every 2 hours. R. 17. At Step Five, the ALJ found that jobs exist in significant numbers in the national economy that claimant can perform, rendering him not disabled.

## II. STANDARD OF REVIEW

The Court reviews the ALJ's decision deferentially, reversing only when "an ALJ's decision denying benefits . . . is not supported by substantial evidence or if it is the result of an error of law." *Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021) (citing 42 U.S.C. § 405(g)). "Substantial evidence is not a high threshold: it means only 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Karr v. Saul*, 989 F.3d 508, 511 (7th Cir. 2021) (quoting *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal quotation marks omitted)).

The court is not to "reweigh evidence, resolve conflicts, decide questions of credibility, or substitute [its] judgment for that of the Commissioner." *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019). Instead, the court determines whether the ALJ articulated an "accurate and logical bridge" from the evidence to his conclusions, *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008), and will "reverse only if the record compels a contrary result." *Fowlkes v. Kijakazi*, No. 21-1303, 2021 WL 5191346, at *2 (7th Cir. Nov. 9, 2021) (internal quotation marks omitted).

### III. ANALYSIS

Claimant urges this Court to reverse the Commissioner's decision, arguing that: (1) the ALJ failed to appropriately assess the paragraph B criteria and improperly acted as a medical expert in finding claimant's impairments caused only moderate limitations; (2) the ALJ failed to account for a moderate limitation in concentration, persistence, or pace in her RFC determination and in the hypothetical posed to the VE; and (3) the ALJ's decision was not supported by substantial evidence. Dkt. 16 at 9-14.

#### A. The ALJ did not commit legal error at Step Three.

Claimant contends the ALJ committed legal error at Step Three by "improperly assess[ing] [claimant's] mental impairments, substituting her own, improper medical opinion." Dkt. 16 at 9. To find whether a claimant's mental impairments meet or medically equal a listing severity at Step Three, the ALJ must decide whether a claimant satisfies the requirements of the paragraph B criteria, which guide the ALJ in determining the extent to which a claimant's mental disorder limits her functioning. 20 C.F.R., Part 404, Subpt. P, Appendix 1. The paragraph B criteria address four areas of mental functioning: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself. *Id*. For each area, the ALJ may find the claimant has no limitation, a mild limitation, a moderate limitation, a marked limitation, or an extreme limitation. *Id*. "To satisfy the paragraph B criteria, [a claimant's] mental disorder must result in

5

'extreme' limitations of one, or 'marked' limitations of two, of the four areas of mental functioning . . . ." *Id.* "When making findings on the paragraph-B criteria, [ ] an ALJ is required to build an accurate and logical bridge from the evidence to his conclusion." *Cleotilde D. v. Saul*, No. 18 C 7224, 2021 WL 428823, at *4 (N.D. Ill. Feb. 8, 2021).

Claimant characterizes the ALJ's assessment of the paragraph B criteria and finding of moderate limitations as the ALJ improperly acting as a medical expert. However, claimant's true contention is that his mental functioning impairments are marked, not moderate. In support, claimant cites to multiple pieces of record evidence that he believes should have led to a finding of more severe limitations and urges this Court to reverse and remand on that basis. While the Court may require reversal and remand if the ALJ's decision is based on serious factual mistakes or omissions, *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014), as demonstrated below, such a case is not present here. Claimant's argument is thus an invitation for this Court to reweigh the evidence, which it may not do. *See e.g.*, *Beardsley*, 758 F.3d at 836–37 (the court "does not attempt to substitute its judgment for the ALJ's by reweighing the evidence, resolving material conflicts, or reconsidering facts or the credibility of witnesses.").

In finding that claimant had moderate limitations in the four areas of mental functioning, the ALJ cited to the following evidence: (1) an outpatient behavioral health report from St. Mary & Elizabeth Medical Center, where claimant described his mood as "neutral," stated he "felt motivated to take care of his daily

6

responsibilities," "denied panic attacks," "denied any problems with focusing," and stated "he is not really a 'people person,'" but "admitted that he became involved with gang members who lived on the same block as he did." R. 16, 882 – 891; (2) the testimony of claimant's mother, which demonstrated that claimant is "able to play video games for hours," "able to go outside the home by himself,"[5] and "felt motivated to take care of his daily responsibilities," R. 16; and (3) a patient intake from Outpatient Mental Health Services, where claimant "presented as calm, euthymic, and cooperative" and did not present with any hallucinations or delusions. R. 16-17, 912-931. This intake also noted that claimant had a history of non-compliance with his mental health treatment and medication management. *Id*.

It is true that the above evidence was the only evidence the ALJ explicitly cited to in her discussion of the paragraph B criteria. However, the Court "is charged with reading an ALJ's opinion as a whole and taking a common-sense approach to its review." *Brandi B. v. Kijakazi*, No. 21 C 4383, 2022 WL 2463558, at *6 (N.D. Ill. July 6, 2022) (citing *Winsted v. Berryhill*, 923 F.3d 472, 478 (7th Cir.

---

[5] Claimant asserts his mother testified that he did not leave the house alone; however, her testimony on this point is ambiguous:

> Q: Okay. And who comes and gets him to go out of the house, or does he go by himself?
>
> A: No. He just go by his self.

R. 51. Later, however, the following exchange occurred:

> Q: Okay. Does he ever go out on his own, like to the store or things like that?
>
> A: No.

R. 52.

7

2019)); *see also Orlando v. Heckler*, 776 F.2d 209, 213 (7th Cir.1985) ("we examine the [ALJ]'s opinion as a whole to ascertain whether he considered all of the relevant evidence, made the required determinations, and gave supporting reasons for his decisions."). Later in her opinion, the ALJ cited to additional evidence in explaining why she found claimant's asserted impairments were moderate and did not preclude him from work: (1) medical records from October 2017, noting claimant's "very poor compliance with his therapist and doctor" and lack of psychiatric hospitalizations, which, in the ALJ's eyes, undercut the claimed severity of his symptoms,[6] R. 18, 805; (2) a field office disability report from December 2019 which indicated "claimant did not have any perceived difficulties," R. 19, 180-182; (3) October 2020 and January 2021 disability determination services ("DDS") opinions, which "found that the claimant had moderate limitations with his ability to remember, interact, and concentrate, [ ] had only mild limitations with his ability to manage himself . . . [and] was able to complete at least two to three step tasks in settings of low social contact," R. 20, 64-73, 75-90; and (4) the report of Dr. Michael Stone, an independent consulting psychological examiner, which found claimant had poor abilities[7] in "perform[ing] simple repetitive tasks," "sustain[ing]

---

[6] Claimant argues the ALJ should have interpreted his lack of compliance with treatment as a symptom of his disorder, as opposed to an indication that his symptoms were more manageable. This is a request for this Court to reweigh the evidence, which it cannot do.

[7] Claimant makes much of Dr. Stone's use of the word "poor," arguing it equates to "marked." Dkt. 16 at 12. However, the ALJ acknowledged Dr. Stone's use of the word "poor" and—citing ample evidence throughout her opinion—found "poor" most appropriately correlated to "moderate" in this instance.

8

concentration, persistence, or pace," and "withstand[ing] the stress and pressures associated with day-to-day work activity." R. 19-20, 906-911. In particular, the ALJ found Dr. Stone's opinion persuasive and supportive of a finding that claimant had moderate limitations.

Contrary to claimant's assertion, the ALJ did not disregard claimant's long history of mental health issues. The ALJ acknowledged the prior ALJ's finding of disability and found that subsequent medical evidence—or lack thereof—rendered this previous finding unpersuasive. Additionally, the ALJ specifically noted claimant's self-reported history of "post-traumatic stress disorder, learning disability, behavioral problems, and depression," and multiple psychiatric hospitalizations. R. 19. However, in consideration of all the evidence discussed *supra* at 6-9, the ALJ found that "claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." R. 18. The mere existence of "record evidence contrary to the ALJ's ultimate conclusion is not itself a basis for remand, as this Court is not permitted to reweigh the evidence, but instead must simply determine whether substantial evidence supports the ALJ's conclusion." *Roy R. v. Kijakazi,* No. 19 CV 1687, 2022 WL 1185601, at *8 (N.D. Ill. Apr. 21, 2022) (citing *Binion v. Chater,* 108 F.3d 780, 782 (7th Cir. 1997) ("where conflicting evidence allows reasonable minds to differ as to whether a claimant is entitled to benefits," the court must defer to the Commissioner's resolution of that conflict)). The ALJ built an accurate and logical bridge from the evidence to her finding of

9

moderate limitations, and her assessment of the paragraph B criteria was supported by substantial evidence. The Court finds no error at Step Three.

### B. The ALJ sufficiently accounted for claimant's moderate limitation in concentration, persistence, or pace in the RFC.

Claimant argues next that the ALJ "failed to adequately account for [a moderate limitation in concentration, persistence, or pace] in her hypothetical to the [VE] and in her [RFC]." Dkt. 16 at 13. The Court disagrees.

"A disability claimant's RFC describes the maximum she can do in a work setting despite her mental and physical limitations." *Thomas v. Colvin*, 745 F.3d 802, 807 (7th Cir. 2014). Concentration, persistence, or pace is the "ability to sustain focused attention and concentration sufficiently long to permit the timely and appropriate completion of tasks commonly found in work settings." 20 C.F.R. § 404, Subpt. P, App. 1 § 12.00C(3). The RFC must address "the totality of a claimant's limitations, including any deficiencies of concentration, persistence, and pace." *Mischler v. Berryhill*, 766 F. App'x 369, 375 (7th Cir. 2019) (quoting *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 619 (7th Cir. 2010) (internal quotation marks omitted)). While the RFC need not explicitly include the phrase concentration, persistence, or pace, "any alternative phrasing must clearly exclude those tasks that someone with the claimant's limitations could not perform." *Paul v. Berryhill*, 760 F. App'x 460, 465 (7th Cir. 2019).

It is well-settled that an RFC which merely restricts a claimant to simple, routine, repetitive tasks insufficiently accounts for concentration, persistence, or pace. *See, e.g.*, *Dula A. v. Saul*, No. 18 CV 4253, 2019 WL 3386998, at *5 (N.D. Ill.

10

July 26, 2019) (collecting cases). "The ability to stick with a given task over a sustained period is not the same as the ability to learn how to do tasks of a given complexity." *O'Connor-Spinner*, 627 F.3d at 620. Therefore, "[r]estricting a person to simple routine tasks . . . is unrelated to the question of whether an individual with difficulties [in] concentration, persistence, and pace can perform such work." *Dula A.*, 2019 WL 3386998, at *6.

In the instant case, the ALJ did not restrict claimant to only simple, routine, or repetitive tasks. The ALJ's RFC is as follows:

> [T]he claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following non-exertional limitations: the individual retains the capacity to understand, remember, concentrate, persist, and perform simple, routine repetitive tasks with the ability to follow simple, but uninvolved, oral, written, or diagrammed instructions in a low stress environment, which is defined as having few, if any, simple, work-related decisions and few, if any, routine changes in the work setting. The claimant cannot interact with the public and after the probationary period, can have only occasional, routine interaction with co-workers. *The individual will need a 10-minute break every 2 hours, which can be accommodated by routine breaks and lunch.*

R. 17. (emphasis added). By finding that claimant would "need a 10-minute break every 2 hours, which can be accommodated by routine breaks and lunch," the ALJ sufficiently addressed claimant's moderate limitation in concentration, persistence or pace. In simpler terms, the ALJ adequately accounted for the fact that claimant might "become distracted and stop working." *Mischler*, 766 F. App'x at 376. The ALJ also included this limitation in her hypothetical posed to the VE. *See* R. 59-60. The Court thus finds no reversible error related to concentration, persistence, or pace.

11

Claimant also asserts the ALJ committed legal error in failing to discuss the second hypothetical posed to the VE and the VE's related testimony.

The first hypothetical the ALJ posed to the VE directed her to consider whether there was any work in the national economy for an individual who possessed the limitations outlined in the above RFC. The ALJ then posed a second hypothetical, asking the VE to consider whether there was any work in the national economy for an individual who possessed the same limitations as the first hypothetical, and who was "unable to complete a normal workday or workweek without interruption, from psychologically based symptoms," and who "would not be able to appropriately interact with supervisors." R. 61. The VE responded that there would be no work for such an individual.

It is true that the ALJ relied solely on the first hypothetical and the VE's associated testimony, affording little to no weight to the second, more restrictive hypothetical. However, "[t]he fact that an ALJ considers adding a . . . limitation to an RFC does not establish that such a limitation is ultimately warranted." *Kathleen C. v. Saul*, No. 19 CV 1564, 2020 WL 2219047, at *6 (N.D. Ill. May 7, 2020); *see also Luis F.V. v. Kijakazi*, No. 20 C 6618, 2022 WL 2208854, at *4 (N.D. Ill. June 21, 2022) (ALJ's disregard of more restrictive second hypothetical was not error); *Perez v. Barnhart*, No. 02 C 6876, 2003 WL 22287386, at *10 (N.D. Ill. Sept. 30, 2003) (reliance on VE testimony is not reversible error when "the hypothetical question posed to the

12

VE was more restrictive than the limitations the ALJ ultimately assigned to the claimant."). As demonstrated above, the ALJ's finding that claimant possessed moderate limitations was sufficiently explained and based on substantial evidence. Therefore, the ALJ committed no error in disregarding the second, more-restrictive hypothetical and the related testimony.

### C. The ALJ's decision is supported by substantial evidence.

Claimant's last argument is that the ALJ's decision is not supported by substantial evidence. As has already been thoroughly explained, the Court finds differently and does not accept claimant's invitation to reweigh the evidence in his favor.

## IV. CONCLUSION

For the foregoing reasons, claimant's motion to reverse the decision of the Commissioner, Dkt. 15, is denied and the Commissioner's motion for summary judgment, Dkt. 21, is granted. The decision of the Commissioner is affirmed.

**So Ordered.**

_____
**Jeannice W. Appenteng**
**United States Magistrate Judge**